JUSTIN E. SMITH *versus* SAMUEL H. SAWYER.

Where a person, other than a regular party to a note voluntarily pays it for
the honor or credit of any indorser without request, he does not thereby
acquire a right to repayment from any of the prior parties thereto.

ON REPORT.

ASSUMPSIT upon a negotiable promissory note against
the second indorser.

The facts sufficiently appear in the opinion.

*J. Baker*, for the plaintiff.

*A. G. Stinchfield*, for the defendant.

CUTTING, J. — This action is brought against the defendant as second indorser of a note of the tenor following, viz. :

"Portland, July 9th, 1859.—Four months after date, I promise to pay to the order of Files & Emery, five hundred dollars, payable at either bank in Portland. Value received. (Signed) "Robert Files."

Indorsements — " Files & Emery, S. H. Sawyer, B. D. Peck."

Assuming that the plaintiff, upon the production of the note duly protested, and legal notice to the parties, has established, *prima facie*, the right of recovery, we are brought to the consideration of the defence.

Peck swears that the note was given to him by Files & Emery to raise money upon for their benefit and that it was discounted by the Norumbega' Bank of Bangor, at his request, for the benefit of Files & Emery, to whom he paid over the proceeds, and that the defendant and himself were only accommodation indorsers. That subsequently Files & Emery conveyed to him their stock of goods, of the value of between eleven and twelve thousand dollars, for the purpose of securing him for liabilities assumed for them. That, at the time the note matured, he had funds in the Norumbega Bank, partly accruing from the proceeds of the sale of that stock of goods, and, according to the best of his recollection, he paid the note by giving his check to the cashier of the bank, or by giving him current funds to meet it.

To rebut this testimony, *George R. Smith* was introduced by the plaintiff, who testified that he was cashier of the bank at the time the note was discounted, and that neither Peck or any party to the note ever paid it to the bank. — That the bank failed in Dec., 1859. After that the note remained in his custody until he passed it to the plaintiff, without the knowledge of the officers of the bank ; that he owed the plaintiff, and, if he collects the note, his liabilities will be diminished to that amount.

On cross-examination, the witness stated that the facts dis-

closed in his letter to Peck were substantially true, which is as follows; viz. : —

"Bangor, July 5, 1865. — Friend Peck. — I received a few days ago from my brother's attorney, a list of interrogatories to be put to you in the case of my brother against S. H. Sawyer, on Files' note indorsed by him.

"I thought I would write you about it, for you may have forgotten about the note. The note was discounted for you, together with sundry other notes, July 23, 1859, by the Norumbega Bank, and when it became due was sent to Portland for payment, and was protested for non-payment. This, I think, was in November, 1859, and, at that time, you will recollect it was very important to have your credit stand good at the Norumbega Bank, and therefore I took up the note with my own funds. The note has never been paid to this day, or any part of it. My brother soon afterwards loaned me some money and I gave him the note in part payment. I write this so that you may know the history of the note. I don't know as it is necessary to state any of the above facts in your answers."

"Respectfully yours,

"Geo. R. Smith."

Now, upon the foregoing facts, substantially stated, the parties have agreed that this Court should render such judgment as they and the law require.

Upon the facts we are inclined to the opinion that Peck never paid the note to the bank, although their mutual relations, perhaps, never have, and never will be fully disclosed. At the same time we may well assume that Geo. R. Smith, from his own funds, paid the note to the bank in order to have Peck's credit stand good at that institution. In other words, he paid the note *supra* protest without the request of any parties to the note. Under such circumstances, it is well settled as to *notes*, the person so paying has no cause of action against any party to the note, as was settled in *Willis* v. *Hobson*, 37 Maine, 405, where SHEPLEY, C. J., remarking upon the authority of Story on Notes, § 453, uses

the following language : — " When a person, not being a regular party to a note, pays it for the honor or credit of the maker, or any indorsers, without request, he does not thereby acquire a right to repayment from any of the prior parties, for whose honor he may have paid it. He can no more make another his debtor by the payment of a note without request, express or implied, than he could by the payment of any ordinary account."

If George R. Smith's letter to Peck " is substantially true," this case is within the foregoing decision. If it be untrue, then it would appear that Smith, the cashier, without authority and in violation of his legal duties, selected from the fossil remains of an insolvent bank, for his private use, the note in suit, and transferred it to the present plaintiff: A charitable construction of his testimony inclines us to give force to the disclosures in his letter. Besides, the lapse of time, during which the note was suffered to remain in the bank after protest, without any action, has a strong tendency to prove that the note had been paid, either by Peck or Smith.                *Plaintiff nonsuit.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and TAPLEY, JJ., concurred.